OLSHAN FROME WOLOSKY LLP
Thomas J. Fleming
Brian A. Katz
1325 Avenue of the Americas
New York, New York  10019
(212) 451-2300
tfleming@olshanlaw.com
bkatz@olshanlaw.com

*Attorneys for plaintiff Crede CG III, Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CREDE CG III, LTD.,<br><br>                   Plaintiff,<br><br>        -against-<br><br>22ND CENTURY GROUP, INC.,<br><br>                 Defendant. | C.A. No. 16 Civ. 03103 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR A PRELIMINARY INJUNCTION**

Table of Contents

Page

Preliminary Statement ............................................................................................... 1

Statement of Facts .................................................................................................... 1

    The Parties ........................................................................................................... 2

    The Financing ...................................................................................................... 2

    The Exchange Right ............................................................................................. 3

    Defendant's Rejection of the Exchange Right and Plaintiff's Exercise .............. 4

    Defendant's Precarious Financial Condition ....................................................... 6

Argument ................................................................................................................... 8

    I       PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION ................... 8

         A.    Legal Standard for Preliminary Injunction ................................... 8

         B.    Crede Will Succeed On the Merits ............................................... 9

         C.    Crede Will Suffer Irreparable Harm Absent Injunctive Relief ................ 12

              1.    The Parties Agreed in Writing that 22nd Century's Failure to Deliver Stock Would Cause Crede Irreparable Harm and Entitle Crede to Injunctive Relief ................... 12

              2.    Defendant Is Unlikely to Be Able to Satisfy a Money Judgment ................... 13

              3.    Courts Consistently Grant Injunctive Relief to Plaintiffs Seeking Delivery of Securities From Financially Troubled Defendants ................... 16

         D.    The Balance of Harm Tips Decidedly in Crede's Favor ........................... 18

         E.    Crede Should Not Be Required to Post a Bond ........................... 19

    II      PLAINTIFF SHOULD BE AWARDED PRELIMINARY DECLARATORY RELIEF ................... 20

Conclusion ................................................................................................................ 20

Table of Authorities

Page

CASES

*Alpha Capital Aktiengesellschaft v. Advanced Viral Research*,
   No. 03 Civ. 10237 (GBD), 2003 WL 328302 (S.D.N.Y. Feb. 11, 2003) .........................13, 17

*Alpha Capital Aktiengesellschaft v. Group Mgmt. Corp.*,
   No. 02 Civ. 2219 (LBS), 2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002) .............................17

*Alpha Capital Anstalt v. Advanced Cell Techn., Inc.*,
   No. 09 Civ. 670 (LAK) (S.D.N.Y. Feb. 10, 2009) ......................................................16, 19, 20

*Black Mountain v. Advanced Cell Techn., Inc.*,
   No. 11 Civ. 7305 (PAE) (S.D.N.Y. Nov. 10, 2011) ...............................................................17

*Castle Creek Tech. Partners, LLC v. CellPoint Inc.*,
   No. 02 Civ. 6662 (GEL), 2002 WL 31958696 (S.D.N.Y. Dec. 9, 2002) ...............8, 13, 15, 16

*Celeste Trust Reg. and Esquire Trade & Fin., Inc. v. Greystone Digital Techn., Inc.*,
   No. 01 Civ. 91 (DAB) (S.D.N.Y. Jan 12, 2001) ....................................................................17

*Doctor's Assocs., Inc. v. Stuart*,
   85 F.3d 975 (2d Cir.1996)......................................................................................................19

*Greenfield v. Philles Records, Inc.*,
   *98* N.Y.2d 562 (2002) .............................................................................................................9

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
   618 F. App'x 31 (2d Cir. 2015)................................................................................................8

*Longview Special Fin. v. Infinium Labs, Inc.*,
   06 Civ. 1772 (S.D.N.Y. Nov. 29, 2006) ................................................................................17

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*,
   107 F.3d 979 (2d Cir.1997).....................................................................................................8

*Maxim Group LLC v. Life Partners Holdings, Inc.*,
   690 F. Supp. 2d 293 (S.D.N.Y. 2010).....................................................................................13

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Doe*,
   868 F. Supp. 532 (S.D.N.Y. 1994).......................................................................................8, 19

*N. Atlantic Instruments v. Haber*,
   18 F.3d 38 (2d Cir.1999)........................................................................................................12

Table of Authorities
(continued)

*Oleg Cassini, Inc. v. Couture Coordinates, Inc.*,
  297 F. Supp. 821 (S.D.N.Y. 1969)..........................................................................11

*Postlewaite v. McGraw-Hill, Inc.*,
  411 F.3d 63 (2d Cir. 2005)..................................................................................11

*Sovereign Business Forms, Inc. v. Sternrite Industries, Inc.*,
  No. 00 Civ. 3867 (BDP), 2000 WL 1772599 (S.D.N.Y. Nov. 28, 2000)...............................13

*Ticor Title Ins. Co. v. Cohen*,
  173 F.3d 63 (2d Cir.1999)...............................................................................12, 13

STATUTES

28 U.S.C. § 2201.......................................................................................8, 19

OTHER AUTHORITIES

Rule 65 of the Federal Rules of Civil Procedure .........................................................7

Plaintiff Crede CG III, Ltd. ("Crede") submits this memorandum of law in support of its motion for preliminary injunctive relief and preliminary declarative relief directing defendant 22nd Century Group, Inc. ("22nd Century") to deliver immediately 2,077,555 shares of 22nd Century common stock to Crede in accordance with the terms of certain warrants held by Crede and exercised on April 26, 2016 and May 17, 2016 and to honor future conversions on similar terms.

<u>Preliminary Statement</u>

Crede brings this motion to enforce its contractual right to exchange its warrants on a cashless basis for shares of 22nd Century common stock – a right 22nd Century has improperly dishonored.  Immediate injunctive relief is required because, based on its own public filings, 22nd Century teeters on the brink of insolvency, with insufficient cash reserves to sustain itself beyond the next few months.  Without injunctive relief directing the issuance of the shares, Crede will have no viable remedy, as 22nd Century is unable to satisfy a money judgment.  Crede is willing to place the proceeds from exercising the exchange right and liquidating the shares in escrow to ensure adequate security for the relief it seeks.  Courts in this District routinely grant injunctive relief under these precise circumstances, where warrant holders, like Crede, establish a likelihood of success on their contract claims.  The Court should do so here to prevent Crede from suffering irreparable harm as a result of 22nd Century's wrongful conduct and precarious financial condition.

<u>Statement of Facts</u>

The facts pertinent to this motion are set forth in the accompanying declarations of Thomas J. Fleming, dated May 18, 2016 ("Fleming Dec."), and Terren Peizer ("Peizer Dec."), dated May 18, 2016, and exhibits thereto.

<u>The Parties</u>

Plaintiff Crede CG III, Ltd. is a Bermuda company, which has its principal place of business in Los Angeles, California.  Peizer Dec. ¶ 2. Crede predominantly invests in "small cap" emerging companies.  *Id.*  Crede has a strong track record of identifying companies with high-growth potential and providing them with the capital needed to achieve their business objectives and create shareholder value.  *Id.*

Defendant 22nd Century, a Nevada Corporation with its principal place of business in Clarence, New York, is a plant biotechnology company that focuses on the research, development, licensing, manufacturing, and worldwide sales and distribution of genetically engineered tobacco products.  Peizer Dec. ¶ 3.  22nd Century's proprietary technology and plant breeding expertise allow it to regulate the levels of nicotine and nicotine alkaloids in the tobacco plant, thereby facilitating the growth of tobacco with reduced nicotine content.  *Id.*  22nd Century is publicly traded on the New York Stock Exchange under the ticker symbol "XXII".  *Id.*

<u>The Financing</u>

Enticed by 22nd Century's unique tobacco products and prospects for success in China and the Asian markets, during the summer of 2014, the parties began negotiations over a structure under which Crede would invest in 22nd Century.  Peizer Dec. ¶ 4.  In September 2014, the parties reached agreement.  *Id.*  Crede's investment was memorialized in a network of integrated contracts, drafted and negotiated in tandem, and executed in late September 2014.  *Id.*  Under these agreements, in exchange for a $10 million investment, Crede received 22nd Century common stock pursuant to a Stock Purchase Agreement, dated September, 17 2014 ("SPA"). Peizer Dec. ¶ 4; Ex. A.

On September 29, 2014, Crede entered into a second set of agreements with 22nd Century, under which it received four separate classes or "tranches" of warrants denominated

2

Tranche 1A, Tranche 1B, Tranche 2 and Tranche 3 (collectively, the "Crede Warrants") to purchase an aggregate 4.25 million shares of 22nd Century's common stock.  Peizer Dec. ¶ 5. Crede also received a 25% interest in a joint venture formed to provide tobacco product to China's state-owned tobacco company.  *Id.*  Crede's Principal, Terren Peizer, was hired as a consultant to the Joint Venture to devote "efforts, business time and attention" on "maximizing" the success of the China JV.  *Id.* Ex. C at § 3.

This motion relates to the Tranche 1A Warrants and 22nd Century's rejection of Crede's valuable exchange right therein.  *See* Peizer Dec. Ex. B (Tranche 1A Warrant Agreement).

<u>The Exchange Right</u>

In addition to Crede's right to purchase common shares at the exercise price, the Tranche 1A Warrants contain an "exchange right" under which Crede has the option to tender the Warrant, in whole or in part, and receive shares of common stock with a specific value, based on then current market prices.  Peizer Dec. ¶ 7; Ex. B at § 5 (the "Exchange Right").  A complete exercise of the Exchange Right entitles Crede to receive shares worth approximately $2.8 million, based on then market prices and subject to a maximum issuance of 5 million shares.  *Id.* ¶ 8.  In contrast to customary warrants, the value due to Crede was a fixed amount, to be paid in shares of 22nd Century stock.  *Id.*  The Exchange Right thus provided Crede with significant protections in the event the Tranche 1A Warrants were "out of the money," *i.e.*, 22nd Century shares traded below the exercise price.  *Id.*

The Exchange Right is fully exercisable at Crede's option at any time from 61 days after closing of the SPA until September 29, 2016.  Peizer Dec. Ex. B at § 5(a).  While the Tranche 1A Warrant restricts Crede's ability to participate in corporate governance, the Agreement explicitly provides that these activity restrictions "shall not limit [Crede's] rights to enforce its

rights or exercise its rights as to the Securities or under this Warrant." *Id.* at § 1(h) (last sentence).[1]

<u>Defendant's Rejection of the Exchange Right and Plaintiff's Exercise</u>

Despite Crede's substantial investment, 22nd Century's business has not performed as anticipated.  Peizer Dec. ¶ 10.  As 22nd Century's share price continued to fall in 2015, Crede's principal, Terren Peizer, occasionally commented on – and even criticized – 22nd Century management in private email conversations with 22nd Century executives and insiders.  *Id.* ¶ 11. During these exchanges, Mr. Peizer and 22nd Century maintained a frank, open dialogue about 22nd Century's performance, as any company would with its single largest investor.  *Id.*  Mr. Peizer was also employed as a consultant to the joint venture formed by 22nd Century to offer its products to China National Tobacco Corp., the state owned supplier of tobacco products in China.  *Id.* at ¶¶ 5, 12.  At no time, however, did Peizer take action to insert himself or others as directors or managers of 22nd Century.  *Id.* ¶ 13.  Nor did 22nd Century ever accuse Peizer of

---

[1]     Section 1(h)(ii) of the Tranche 1A Warrant provides, in relevant part, that a Holder shall not:

> engage or participate in any actions, plans or proposals which relate to or would result in (A) acquiring additional securities of the Company, alone or together with any other Person, which would result in Holder or its Affiliates beneficially owning (within the meaning of Section 13(d) under the 1934 Act) more than 9.9% of the Common Stock, (B) an extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving Company or any of its Subsidiaries, (C) a sale or transfer of a material amount of assets of the Company or any of its Subsidiaries, (D) any change in the present board of directors or management of the Company, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board . . .

Peizer Dec. Ex. B at §1(h)(ii).

doing so at the time, or advise him that such conduct violated any restrictions, or had any impact at all on the Tranche 1A Warrants.  *Id.*

As its available cash dwindled, 22nd Century sought ways to stem its losses – and it set its sights on eliminating its commitments to Crede, its largest shareholder, to accomplish that goal. Peizer Dec. ¶ 14.  On March 10, 2016, 22nd Century abruptly sent Peizer a letter in which it purported to "rip up" the Exchange Right.  Peizer Dec. Ex. D (the "March 10 Letter").  The March 10 Letter claimed, for the first time, that the email exchanges more than a year earlier violated the Tranche 1A Warrants' "activity restrictions" and nullified the Exchange Right.  *Id.* The March 10 Letter was a pretext, however, as the so-called "activity restrictions" relate to formal corporate restructuring activities – such as instituting proxy contests, shareholder mobilization strategies, corporate reorganization and the like – none of which ever occurred. Peizer Dec. Ex. B; ¶ 16.

Notwithstanding the March 10 letter, Crede partially exercised the Exchange Right by proper notice to 22nd Century on April 26, 2016, seeking 77,555 shares of 22nd Century common stock pursuant to the Black-Scholes Exchange Value.  *See* Peizer Dec. Ex. E. (the "April Exchange Notice"); ¶ 17.  To protect its rights, Crede also commenced this lawsuit on April 26, 2016, stating its intent to exercise in full the Exchange Right, consistent with market liquidity.

On April 28, 2016, 22nd Century, through counsel, rejected Crede's April Exchange Notice, and dishonored the Exchange Right citing the reasons laid out in the March 10 Letter. Peizer Dec. Ex. G.

On May 17, 2016, Crede sought an additional 2 million shares of 22nd Century common stock pursuant to the Exchange Right and the Black-Scholes Exchange Value.  *See* Peizer Dec. Ex. F (the "May Exchange Notice, and collectively with the April Exchange Notice, the

"Exchange Notices").  By the Exchange Notices, Crede has sought a total of 2,077,555 shares of 22nd Century common stock.  As soon as permissible under the 9.9% limitation in the Tranche 1A Warrant Agreement, Crede intends to exercise the Exchange Right up to the full $2.8 million value of the Warrants.

<u>Defendant's Precarious Financial Condition</u>

22nd Century's most recent quarterly financial statements, filed with the SEC on May 10, 2016, portray a decidedly bleak financial outlook, providing, in relevant part:

> **We must successfully execute our business plan to increase revenue in order to achieve positive cash flows to sustain adequate liquidity without requiring additional funds from external sources to meet minimum operating requirements.** The Company's Form S-3 universal shelf registration statement was filed with the U.S. Securities and Exchange Commission ("SEC") on April 18, 2014, and became effective on June 5, 2014. The universal shelf registration statement will allow, but not compel, the Company to raise up to approximately $27 million of capital over a three-year period ending June 5, 2017 through a wide array of securities at times and in amounts to be determined by the Company. **We will likely need to raise additional capital to fund (i) our operations and (ii) FDA approval of our products. There can be no assurance that additional capital will be available on acceptable terms or at all.**

Fleming Dec. Ex. B at 37 of 44.  While this most recent filing by 22nd Century makes Crede's application for relief particularly urgent, the Company's Annual Report for the fiscal year ended 2015, filed publicly on February 18, 2016, confirms that 22nd Century's downward trajectory is not a blip, but rather precipitous decline.  This report shows that the dire financial situation has only grown worse for 22nd Century.

Among other things, the Annual Report details 22nd Century's history of substantial losses, including net losses of approximately $11.0 million, $15.6 million, and $26.1 million during the years ended December 31, 2015, 2014 and 2013, respectively, resulting in $66 million total losses since inception.  Fleming Dec. Ex. A at 18 of 85.  Further, the Annual Report plainly

6

discloses as a risk factor 22nd Century's precarious financial condition.  The Annual Report provides in relevant part that:

> [W]e believe resulting cash balances will be adequate to sustain operations and meet all current obligations as they come due through approximately October of 2016. ***There is also no guarantee that we will be able to raise additional capital on favorable terms, or at all. Any inability to raise additional capital could have an impact on our ability to continue to operate our business.***

Fleming Dec. Ex. A, at 18 of 85.

As the more recent quarterly financial statement confirms, existing cash, as of March 31, 2016, of $6,051,593 and spending of approximately $880,000 per month, results in 22nd Century maintaining only $4.4 million in available cash by the end of this month.  Fleming Dec. Ex. B at 4-8.

Equally troubling is the following acknowledgement by the Company that its own financial reporting is not trustworthy:

> Based on our evaluation under the frameworks described above, our management concluded that as of December 31, 2015, that our internal controls over financial reporting were not effective and that material weaknesses exist in our internal control over financial reporting.

Fleming Dec. Ex. A at 49 of 85 (emphasis added).  Furthermore, 22nd Century shares have declined 43% in 2016 already, and have lost 67% of their value since Crede made its investment in 2014, suggesting that the failure to provide Crede with the shares to sell today would create irreparable harm due to the likelihood that absent the relief sought here, the stock would be worth substantially less in the future than it is today, without the Company having sufficient funds to compensate Crede for the decline.  *Id.* Ex. C.

Absent injunctive relief, 22nd Century's precarious financial condition renders the Exchange Right worthless in the foreseeable future.

<u>Argument</u>

I

<u>PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION</u>

A.   <u>Legal Standard for Preliminary Injunction</u>

To obtain a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil

Procedure, a movant must establish:  "(1) likelihood of success on the merits; (2) likelihood that

the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that

the balance of hardships tips in the moving party's favor; and (4) that the public interest is not

disserved by relief."  *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir.

2015).

The standard for preliminary declarative relief is the same:

> Given the ability of the Court to issue a final declaratory judgment
> under 28 U.S.C. § 2201, which is equitable in nature, this Court
> also has the power to issue such provisional equitable relief when
> it is necessary, based on the urgency of the situation, the
> irreparable harm that would otherwise occur, and the remaining
> factors which courts consider when granting provisional injunctive
> relief.

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Doe*, 868 F. Supp. 532, 535 (S.D.N.Y. 1994).

Under well-established precedent, Crede's enforcement of its Exchange Notices meet

these standards.  *See, e.g.*, *Castle Creek Tech. Partners, LLC v. CellPoint Inc.*, No. 02 Civ. 6662

(GEL), 2002 WL 31958696, at *3 (S.D.N.Y. Dec. 9, 2002) (granting preliminary injunction

compelling defendant corporation to deliver shares of its common stock after defaulting in

honoring a convertible note).  *See also*, cases cited *infra* at Point I-C-3.

The Court need not hold an evidentiary hearing prior to granting Crede a preliminary

injunction because the essential facts relevant to this motion are not in dispute.  As the Second

Circuit has explained, "[g]enerally, the district court is not required to conduct an evidentiary

hearing on a motion for a preliminary injunction when essential facts are not in dispute."

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir.1997)

(affirming District Courts grant of preliminary injunction on basis of paper record where dispute

concerned proper interpretation of contract).  As set forth below, Crede's right to relief is based

on clear contractual commitments and 22nd Century's own admissions.

      B.     <u>Crede Will Succeed On the Merits</u>

      Based on the language of the Tranche 1A Warrants agreement, Crede's entitlement to

relief is unmistakable.  This motion does not implicate a complicated mathematical formula, or

other factual issues concerning the nature and operation of the Tranche 1A Warrants.  Rather, the

lone issue in dispute is whether Crede has the basic right to exercise the Exchange Right in the

first instance.  On that issue, there can be no reasonable debate that Crede will succeed.

      The Tranche 1A Warrant explicitly provides that Crede may exercise the Exchange Right

at any time "that is sixty-one (61) days" after the closing of the SPA – September 17, 2014 –

until September 17, 2016.  Peizer Dec. Ex. B at § 5(a).  Crede exercised the Exchange Right on

April 26, 2016 and May 17, 2016 – well within the permitted time period.  Peizer Dec. Exs. E

and F.  Moreover, Crede's Exchange Notices complied in all respects with the notice and form

requirements under the Tranche 1A Warrant Agreement – and 22nd Century has never contended

otherwise.  Indeed, 22nd Century raises no issue whatsoever with the manner in which Crede

exercised the Exchange Right or the amount of shares Crede is entitled to under the Agreement.

Rather, 22nd Century's lone argument is that Crede forfeited the Exchange Right based on a

supposed breach of the "Activity Restrictions" found in Section 1(h)(ii) of the Tranche 1A

Warrants.  Peizer Dec. Ex. D.  As set forth below, that argument is deeply flawed for several

reasons.

As an initial matter, 22nd Century entirely overlooks the fact that the Activity Restrictions provision of the Tranche 1A Warrant explicitly states that breach of the Activity Restrictions <u>does not</u> affect Crede's rights to exercise the Exchange Right.  Section 1(h) of the Tranche 1A Warrant Agreement provides: "The restrictions contained in this paragraph (h) <u>shall not limit [Crede's] rights to enforce its rights or exercise its rights as to the Securities or under this Warrant.</u>"  Peizer Dec. Ex. B at § 1(h) (concluding sentence) (emphasis added).  As such, even assuming a violation of the Activity Restrictions in Section 1(h) occurred, and it has not, such a violation does not curtail Crede's ability to exercise the Exchange Right.  Crede's Exchange Notice must be honored accordingly.  *See, e.g., Greenfield v. Philles Records, Inc., 98* N.Y.2d 562, 569 (2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.").

While 22nd Century makes much of the fact that Section 5 of the Tranche 1A Warrant states that the Warrant shall be exchangeable "subject to the limitations in Section 1(h)(ii)" of the Agreement, that clause has no bearing on Crede's Exchange Notices.  Section 1(h)(ii) imposes restrictions on formal activity designed to restructure the Company.  It provides, in relevant part that no Holder will:

> engage or participate in any actions, plans or proposals which relate to or would result in (A) acquiring additional securities of the Company, alone or together with any other Person, which would result in Holder or its Affiliates beneficially owning (within the meaning of Section 13(d) under the 1934 Act) more than 9.9% of the Common Stock, (B) an extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving Company or any of its Subsidiaries, (C) a sale or transfer of a material amount of assets of the Company or any of its Subsidiaries, (D) any change in the present board of directors or management of the Company, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board, (E) any material change in the present capitalization or dividend policy of the Company . . . .

10

Peizer Dec. Ex. B at § 1(h).

22nd Century claims that Peizer violated Section 1(h)(ii)(D), Peizer Dec. Ex. D, but its belated claim of forfeiture suffers from multiple defects.

First, the emails 22nd Century relies on to support its claim reflect, at most, that Peizer merely criticized 22nd Century Management in private emails.  There is no allegation that Peizer engaged in formal challenges to the Board or proposals to reconstitute its composition.[2]  The restrictions in Section 1(h) must be read together.  Contracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the contract.  *See, e.g.*, *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005).  On such a reading it is clear that internal criticism that does not promote or lead to hostile corporate governance changes does not violate these restrictions.

Second, at most, the limitation set forth in the Exchange Right applies to a contemporaneous violation of the "activities restrictions."  In other words, if Crede is violating those restrictions, it may not receive additional shares under the Exchange Right.  There is no reason for Crede to be denied shares when its contemporaneous conduct is in compliance with the contract.

Third, even assuming, *arguendo*, 22nd Century's reading of the Tranche 1A Warrant Agreement is correct, the conduct 22nd Century complains of occurred, in nearly all cases, over one year prior to 22nd Century's attempt to dishonor the Exchange Right.  Peizer Dec. Ex. D.

---

[2]     Even assuming, the limiting language in Section 5 affects Crede's Exchange Right, and it does not, 22nd Century entirely misreads the limiting language.  Such a limitation would only apply *if the effect of Crede exercising the Exchange Right would itself violate the Activity Restrictions* – such as by increasing Crede's ownership by over 9.9% of 22nd Century common stock (Clause 1(h)(A)), or where the issuance of such additional shares would "materially" alter 22nd Century's dividend policy (Clause 1(h)(E)).  Crede's exercise of the Exchange Right has had no such impact here.

Given the stale nature of these communications, the allegedly offending conduct was either cured, or waived by the time 22nd Century asserted it as a pre-textual basis for dishonoring the Exchange Right.

Last, Defendant's proposed application of the "subject to" language in the Exchange Right results in a forfeiture of Crede's right to receive up to 5 million shares. New York law abhors such a forfeiture and a contract may not be construed to reach such a result. *See, e.g., Oleg Cassini, Inc. v. Couture Coordinates, Inc.*, 297 F. Supp. 821, 831 n.15 (S.D.N.Y. 1969). The facts here bear out the draconian nature of the interpretation advocated by 22nd Century. Crede's emails may have ruffled the feathers of management but could not possibly have caused injury or financial loss. Moreover, Crede had no contractual obligation to vote for management and was free to express criticism to protect its large investment in 22nd Century – particularly where 22nd Century specifically sought Crede's opinions in the Consulting Agreement. See Peizer Dec. Ex. C at § 3 (services).

Accordingly, Crede has sufficiently satisfied demonstrated a likelihood of success on its claim for enforcing the Exchange Right for purposes of establishing its right to a preliminary injunction.

C.     <u>Crede Will Suffer Irreparable Harm Absent Injunctive Relief</u>

Crede also satisfies the second requirement for a preliminary injunction, irreparable harm in the absence of injunctive relief.

      1.     The Parties Agreed in Writing that 22nd Century's Failure to Deliver Stock Would Cause Crede Irreparable <u>Harm and Entitle Crede to Injunctive Relief</u>

The parties, represented by sophisticated counsel, agreed that Crede would suffer irreparable harm if 22nd Century failed to comply with its obligations under the Warrant and that

Crede would be entitled to equitable relief to remedy any such failures.  Thus, Section 15 of the

Warrant provides in relevant part:

> The Company acknowledges that a breach by it of its obligations
> hereunder will cause irreparable harm to the Holder and that the
> remedy at law for any such breach may be inadequate.   The
> Company therefore agrees that, in the event of any such breach or
> threatened breach, the holder of this Warrant shall be entitled, in
> addition to all other available remedies, to an injunction restraining
> any breach, without the necessity of showing economic loss and
> without any bond or other security being required.

Peizer Dec. Ex. B at § 15.

The courts in *N. Atlantic Instruments v. Haber*, 18  F.3d 38, 49 (2d Cir.1999) and *Ticor*

*Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir.1999), both noted a contractual provision in the

agreement under consideration which stated that a breach would cause irreparable injury in

awarding injunctive relief.  Indeed, in *Ticor*, the court stated that the acknowledgment of

irreparable injury "might arguably be viewed as an admission" in that regard.  *Ticor*, 173 F.3d at

69.  *See also Alpha Capital Aktiengesellschaft v. Advanced Viral Research*, No. 03 Civ. 10237

(GBD),  2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003) (noting defendant's acknowledgment

of irreparable injury in granting injunctive relief); *Sovereign Business Forms, Inc. v. Sternrite*

*Industries, Inc.*, No. 00 Civ. 3867 (BDP), 2000 WL 1772599, at *13 (S.D.N.Y. Nov. 28, 2000)

(same).

Notwithstanding the foregoing, Crede is willing to place the proceeds from exercising the

Exchange Right and liquidating the distributed shares in escrow to ensure adequate security for

the relief it seeks.

2.     Defendant Is Unlikely to Be Able to Satisfy a Money Judgment

While money damages may be an appropriate remedy for 22nd Century's breach of

contract, Crede will suffer irreparable harm absent 22nd Century's immediate delivery of stock

13

because 22nd Century is unable to fund its own business and it is unlikely the company will be able to satisfy any money judgment at the end of this case.  *See Castle Creek*, 2002 WL 31958696 at *3 - *4 ("a defendant's imminent insolvency can constitute irreparable harm when it is possible that the defendant will not be able to pay damages at the conclusion of the litigation.").

At present—and when Crede sought to exercise—Crede is entitled to receive at least 2,077,555 shares of 22nd Century common stock, and if permitted to exercise, would obtain additional shares with a value of at least $1.2 million per share.  Furthermore, 22nd Century's failure to deliver the shares results in contractual damages of 1.5% of the value of the shares withheld per day.  Peizer Dec. Ex.B at § 1(c).  With the current market value at approximately $0.80 per share, Crede's damages far exceed $2 million.  *See Maxim Group LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 299-301 (S.D.N.Y. 2010) (measure of damages for corporation's non-delivery of shares pursuant to contract is value of shares on date of breach).

22nd Century's financial condition is bleak.  In its most recent quarterly report filed with the SEC, on May 10, 2016, 22nd Century disclosed the troubling extent of its starvation for cash, acknowledging that:

> **We must successfully execute our business plan to increase revenue in order to achieve positive cash flows to sustain adequate liquidity without requiring additional funds from external sources to meet minimum operating requirements.** The Company's Form S-3 universal shelf registration statement was filed with the U.S. Securities and Exchange Commission ("SEC") on April 18, 2014, and became effective on June 5, 2014. The universal shelf registration statement will allow, but not compel, the Company to raise up to approximately $27 million of capital over a three-year period ending June 5, 2017 through a wide array of securities at times and in amounts to be determined by the Company. **We will likely need to raise additional capital to fund (i) our operations and (ii) FDA approval of our**

**products. There can be no assurance that additional capital will be available on acceptable terms or at all.**

Fleming Dec. Ex. B at 37 of 44 (emphasis added).

And, according to its most recent annual filing, 22nd Century has yet to turn a profit. The Company suffered more than $66 million in losses since inception. Fleming Dec. Ex. A at 18 of 85; it has lost over $52 million over the last three fiscal years. *Id.*. As the more recent quarterly financial statement confirms, existing cash, as of March 31, 2016, of $6,051,593 and spending of approximately $880,000 per month, results in 22nd Century maintaining only $4.4 million in cash by the end of this month. *Id.* Ex. B. at 4-8.

Without significant cash infusions, 22nd Century concedes that it is unlikely the company will be able to continue as a going concern:

> [W]e believe resulting cash balances will be adequate to sustain operations and meet all current obligations as they come due through approximately October of 2016. ***There is also no guarantee that we will be able to raise additional capital on favorable terms, or at all. Any inability to raise additional capital could have an impact on our ability to continue to operate our business.***

*Id.* (emphasis added).

Given its weak financial condition, it is unlikely that 22nd Century will be able to satisfy a multi-million dollar money award at the end of this action. If 22nd Century is no longer a going concern at the close of litigation, a final judgment directing 22nd Century to deliver common stock would be pointless, and Crede would be left without the exercised warrant shares and without the option of successfully enforcing a money judgment for its damages, thus suffering irreparable injury.

15

3.     Courts Consistently Grant Injunctive Relief to Plaintiffs Seeking
Delivery of Securities From Financially Troubled Defendants

Courts routinely award preliminary injunctive relief to plaintiffs in Crede's situation.

For example, the District Court in *Castle Creek*, 2002 WL 31958696, granted a preliminary injunction to the plaintiff, compelling defendant Cellpoint to deliver approximately 1.6 million shares of Cellpoint common stock in accordance with the terms of its convertible promissory note.  The District Court found that irreparable harm was demonstrated in that case, because the plaintiff had "provided ample and specific evidence that CellPoint is at the brink of insolvency, and that by the conclusion of the litigation, CellPoint may be in no position to satisfy a money judgment or an injunction." *Id.* at *4.  Cellpoint had recurring significant losses and was spending more money than it received through its operations. *Id.* at *4.  In addition, as with 22nd Century, Cellpoint's accountants had expressed substantial doubt about the company's ability to continue as a going concern unless it obtained significant additional financing. *Id.*  The Court also found that plaintiff Castle Creek had demonstrated a substantial likelihood that it would prevail on the merits of its claim. *Id.* at *5 - *6.

In *Alpha Capital Anstalt*, *supra*, Judge Crotty granted a preliminary injunction ordering defendant Advanced Cell to deliver 39 million shares of its common stock to the plaintiff in accordance with the plaintiff's stock purchase warrants and convertible debentures.  Judge Crotty found, in similar facts as those here, that a money judgment at the end of litigation would not make the plaintiff whole because Advanced Cell's poor financial condition—as evidenced by the company's chronic unprofitability and accumulated deficit of nearly $190 million—made it unlikely that it would be around long enough to satisfy such a judgment. *Id.* at 4 - 5.  Judge Crotty also declined to order the plaintiff to post a bond given the plaintiff's overwhelming likelihood of success. *Id.* at 6.

16

In a prior case between Alpha Capital and Advanced Cell, *Alpha Capital Anstalt v. Advanced Cell Techn., Inc.*, No. 09 Civ. 670 (LAK) (S.D.N.Y. Feb. 10, 2009) (a copy of which is provided for the Court's convenience), the plaintiff attempted to exercise its warrants and convertible debentures and sued the defendant corporation when it refused to deliver the required shares to plaintiff.  Judge Kaplan granted plaintiff's motion for injunctive relief and ordered the defendant to deliver the common stock to which plaintiff was entitled upon conversion of its securities.  On the issue of irreparable harm, Judge Kaplan noted the defendant's poor financial condition and concluded that, "It is quite clear that the plaintiff would have no remedy at law in the absence of the preliminary injunction which I am now going to grant."  *Id.* at 15 - 17.

In a subsequent case against Advanced Cell, *Black Mountain v. Advanced Cell Techn., Inc.*, No. 11 Civ. 7305 (PAE) (S.D.N.Y. Nov. 10, 2011) (a copy of which is provided for the Court's convenience), Judge Engelmeyer granted a preliminary injunction in favor of another investor and ordered Advanced Cell to deliver 18 million shares of its common stock in accordance with the plaintiff's stock purchase warrant.  With respect to the plaintiff's irreparable harm, Judge Engelmeyer noted that Advanced Cell's reported negative net worth of $6 million and consistent losses made it clear that, "by the time this underlying action reached completion, there is a great risk that money damages will not be available."  *Id.* at 30-31.  Like Judge Crotty, Judge Engelmeyer also declined to order the plaintiff to post a bond.  *Id.* at 35.

In *Longview Special Fin. v. Infinium Labs, Inc.*, 06 Civ. 1772 (S.D.N.Y. Nov. 29, 2006) (a copy of which is provided for the Court's convenience), Judge Holwell granted a preliminary injunction requiring the defendant corporation to comply with the terms of its convertible debentures and deliver common stock in accordance with the plaintiff's conversion notice. Judge Holwell noted plaintiff's showing that the defendant, like 22nd Century, was near-insolvent

and likely could not pay money damages at the end of litigation.  *Id.* at 20 - 21.  He also noted that:

> Compelling compliance rather than simply rewarding damages
> reinforces the sanctity of bargains between corporations and
> creditors and investors and is consistent with the debenture
> holders' potential exercise of their rights as equity shareholders.

*Id.* at 21.

These five decisions are consistent with other precedent from this District.  *See, e.g.*, *Alpha Capital Aktiengesellschaft*, *supra*; *Alpha Capital Aktiengesellschaft v. Group Mgmt. Corp.*, No. 02 Civ. 2219 (LBS), 2002 WL 31681798, at *11 (S.D.N.Y. Nov. 25, 2002); *Celeste Trust Reg. and Esquire Trade & Fin., Inc. v. Greystone Digital Techn., Inc.*, No. 01 Civ. 91 (DAB) (S.D.N.Y. Jan 12, 2001) (a copy of which is provided for the Court's convenience).

Like the defendant corporations in the cases cited above, 22nd Century is nearly broke and its future viability and ability to continue as a going concern is suspect at best.  22nd Century and its auditors concede this in the company's public filings.  Like the plaintiffs in these cases, Crede's success on the merits in this case is assured, but it is unlikely to be able to collect on a money judgment at the end of this action because of 22nd Century's precarious financial condition.  Consistent with the cases cited above, Crede has demonstrated its likelihood of success and irreparable harm.

### D.    The Balance of Harm Tips Decidedly in Crede's Favor

There can be no debate that the balance of equities favors Crede.  Crede's bargained-for Exchange Right has been dishonored on pre-textual grounds.  Without injunctive relief, Crede will be left with no remedy.  Conversely, 22nd Century should not be rewarded for its self-serving

attempts to improve its own financial condition by cherry-picking which commitments it wants to honor and which it does not.[3]

     E.    <u>Crede Should Not Be Required to Post a Bond</u>

Given that Crede is likely to succeed on its underlying claim and 22nd Century will not suffer harm if compelled to honor the Exchange Right, the Court should not require Crede to post a bond in order to obtain the preliminary injunction it seeks.

Although Rule 65(c) of the Federal Rules of Civil Procedure speaks in mandatory terms of the posting of a bond or other security by the party seeking preliminary injunctive relief, the Second Circuit holds that the bond requirement is discretionary and may be disposed of where there is no proof that the party subject to the injunction will suffer harm as a result of the injunction. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir.1996) (finding bond requirement of Rule 65(c) is within district court's discretion and not required where there is no proof of likelihood of harm). Here, 22nd Century has waived any need for a bond in the Warrant.

Here, there is no reasonable possibility that 22nd Century will suffer any monetary damage as a result of delivering common stock in accordance with its contractual obligations under the Tranche 1A Warrants. Because there is no likelihood of harm should the Court compel 22nd Century to deliver the shares to which Crede is entitled, the Court should dispense with the requirement of a bond. Alternatively, the Court should permit Plaintiff to deposit the sale proceeds in escrow, pending a final judgment.

---

[3]    In addition, as this Motion involves private contracts between commercial parties, it does not do a disservice to the public interest. Rather, this motion seeks to uphold the public's interest in ensuring that bargained for commercial contracts are upheld, and that the investing public can rely on agreements struck with institutions issuing securities in the public markets.

II

<u>PLAINTIFF SHOULD BE AWARDED PRELIMINARY DECLARATORY RELIEF</u>

Plaintiff is also entitled to preliminary declarative relief declaring the validity of the Exchange Right and Crede's ability to conduct additional exchanges. *See Merrill Lynch*, 868 F. Supp. at 535 ("Given the ability of the Court to issue a final declaratory judgment under 28 U.S.C. § 2201, which is equitable in nature, this Court also has the power to issue such provisional equitable relief when it is necessary, . . . .").

In *Alpha Capital Anstalt*, *supra*, for example, Judge Kaplan granted preliminary declaratory relief in circumstances nearly identical to those found here. In that case, an investor sought a declaration and a preliminary injunction directing the company to deliver shares and to honor all future exercises. *Id.* at 15-17. Judge Kaplan granted the requested injunctive relief, including the requirement that defendants honor the plaintiff's future conversions. *Id.*

<u>Conclusion</u>

Because Crede has demonstrated all required elements needed to authorize issuance of a preliminary injunction, Crede respectfully requests that the Court issue an order, pending final determination of this action, directing 22nd Century (a) to deliver immediately at least 2,077,555 shares of its common stock to Crede in accordance with the terms set forth in the Warrants; and (b) to honor Crede's future exercises of its Warrants.

20

Dated:  New York, New York
         May 19, 2016

OLSHAN FROME WOLOSKY LLP

By:    */s/ Thomas J. Fleming*
        Thomas J. Fleming
        Brian A. Katz
        *Attorneys for plaintiff*
        1325 Avenue of the Americas, New
        York, New York 10019
        (212) 451-2300