UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                            :

CREDE CG III, LTD.,                  :
                                            :

                         Plaintiff,    :          16 Civ. 3103 (KPF)
                                            :

                           v.                :         **<u>OPINION AND ORDER</u>**
                                            :

22ND CENTURY GROUP, INC.,     :
                                            :

                           Defendant.  :
                                            :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      This dispute arises out of an investment arrangement between Plaintiff Crede CG III, Ltd. ("Crede") and Defendant 22nd Century Group, Inc. ("22nd Century"), and the souring of that relationship in 2016. Since Crede filed suit in March of that year, 22nd Century has twice moved for summary judgment. First, in March 2017, 22nd Century requested that the Court grant summary judgment on four claims. That request was largely unsuccessful: The Court denied the motion as to three of four counts. Now, in its second attempt, 22nd Century moves the Court for partial summary judgment, this time seeking to remove or limit certain categories of damages prior to trial. Here, too, 22nd Century has only limited success. For the reasons that follow, the Court grants in part, and denies in part, 22nd Century's motion.

# BACKGROUND[1]

The Court's Orders of January 20, 2017, and December 28, 2017, provide a thorough review of the relevant facts of this case. *See Crede CG III, Ltd.* v. *22nd Century Grp., Inc.,* No. 16 Civ. 3103 (KPF), 2017 WL 280818, at *1-6 (S.D.N.Y. Jan. 20, 2017) ("*Crede I*"); *Crede CG III, Ltd.* v. *22nd Century Grp., Inc.*, No. 16 Civ. 3103 (KPF), 2017 WL 6729368, at *1-7 (S.D.N.Y. Dec. 28, 2017) ("*Crede II*"). As a result, this Court assumes the parties' familiarity with the underlying facts and will only discuss what is necessary to resolve the instant motion.

Broadly speaking, this dispute arises out of an investment arrangement in which Crede agreed to provide capital and other services to support the business interests of 22nd Century. *See Crede I,* 2017 WL 6729368, at *1. In return, Crede received, among other consideration, warrants giving it the right to purchase 22nd Century stock or to exchange the warrants for 22nd Century stock. *See id.* Among the terms of one of these warrants was a prohibition on Crede engaging in certain activities related to the organization of 22nd Century's Board of Directors. *See id.* After Crede's principal sent a series of

---

[1] This Opinion draws from the parties' briefing, including 22nd Century's opening memorandum of law ("Def. Br." (Dkt. #100)), Crede's memorandum in opposition ("Pl. Opp." (Dkt. #110)), 22nd Century's reply ("Pl. Reply" (Dkt. #115)), 22nd Century's Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #102)), Crede's Opposition to 22nd Century's Local Rule 56.1 Statement ("Pl. 56.1 Opp." (Dkt. #111)), and certain exhibits submitted by the parties. 22nd Century has submitted exhibits as attachments to the Declaration of John A. Tucker in support of the motion for partial summary judgment, including the deposition of Terren Peizer (Tucker Decl., Ex. A (Dkt. #103-1 ("Peizer Dep."))), the deposition of Jeffrey Schultz (Tucker Decl., Ex. B (Dkt. #103-2 ("Schultz Dep."))), the Tranche 1A Warrant (Tucker Decl., Ex. E (Dkt. #103-5 ("Warrant"))), and the transcript of the hearing held in this Court on July 11, 2018 (Tucker Decl., Ex. O (Dkt. #103-15 ("July 11 Tr."))).

incendiary emails to 22nd Century members and shareholders, 22nd Century invoked the prohibition and declared that Crede's right to exchange the warrant for stock was null and void. *See id.* Crede balked at this response, and unsuccessfully attempted to exchange the warrants on two occasions. *See id.* On April 26, 2016, Crede sought to exchange 77,555 shares. (Def. 56.1 ¶ 5). Later, on May 17, 2016, Crede sought to exchange 2,000,000 shares. (*Id.* at ¶ 7). Prior to the second attempted exchange, Crede filed this lawsuit. (Dkt. #1).

On March 20, 2017, before undertaking any formal discovery, 22nd Century moved for summary judgment. (Dkt. #52-54). On December 20, 2017, the Court denied the motion as to all counts, except for one. (Dkt. #61). On July 9, 2018, 22nd Century filed a pre-motion letter, requesting leave to file a motion for partial summary judgment on four discreet aspects of Crede's remaining claims, relating to damages. (Dkt. #94). The Court held a conference on July 11, 2018, at which time 22nd Century argued that the proposed motion would limit the issues for trial and facilitate settlement discussions. (July 11 Tr. 9:03-11:02). On July 20, 2018, the Court granted 22nd Century's letter motion and set a briefing schedule. (Dkt. #97). The motion for partial summary judgment was fully briefed as of October 11, 2018. (Dkt. #100-03, 108-15).

**DISCUSSION**

**A. Applicable Law**

    **1. Summary Judgment Under Federal Rule of Civil Procedure 56**

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[2]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see*

---

[2]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  See Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refers to "genuine issues of material fact."

4

*also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  In considering "what may reasonably be inferred" from evidence in the record, however, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).  Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita,* 475 U.S. at 587; *Wyler* v. *United States,* 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

### 2. Canons of Contractual Interpretation

A court interpreting a contract must "give effect to the intent of the parties as revealed by the language of their agreement," while giving the

contract's "words and phrases ... their plain meaning ... so as to give full meaning and effect to all of [the contract's] provisions." *Chesapeake Energy Corp.* v. *Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 113-14 (2d Cir. 2014) (quoting *Olin Corp.* v. *Am. Home Assur. Co.,* 704 F.3d 89, 99 (2d Cir. 2012); *Compagnie Financiere de CIC et de L'Union Europeenne* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 232 F.3d 153, 157 (2d Cir. 2000)). Under New York law, which governs the parties' relationship here under the agreements at issue, "[i]t is well settled that a contract must be read as a whole to give effect and meaning to every term" and "in a way [that] reconciles all [of] its provisions, if possible." *Maven Techs., LLC* v. *Vasile*, 46 N.Y.S.3d 720, 722 (4th Dep't 2017) (quoting *N.Y. State Thruway Auth.* v. *KTA-Tator Eng'g Servs., P.C.*, 913 N.Y.S.2s 438, 440 (4th Dep't 2010)). Indeed, "[i]n construing a contract, a court should read the contract as a whole and avoid any interpretation that would render a contractual provision without force and effect." *Luitpold Pharm., Inc.* v. *Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (internal citations omitted) (construing New York law).

"[W]hen parties set down their agreement in a clear, complete document, their writing should ... be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." *W.W.W. Assocs., Inc.* v. *Giancontieri*, 77 N.Y.2d 157, 162 (1990). "Only when a court finds ambiguity in the parties' written agreement may it look to extrinsic evidence to discern the parties' intent." *Luitpold Pharm., Inc.*, 784 F.3d at 87.

A contract is ambiguous "if its terms 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Chesapeake Energy Corp.*, 773 F.3d at 114 (quoting *Law Debenture Tr. Co. of N.Y.* v. *Maverick Tube Corp.,* 595 F.3d 458, 465 (2d Cir. 2010)). Conversely, "[n]o ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (quoting *Maverick Tube Corp.,* 595 F.3d at 467).

A summary judgment motion involving contractual interpretation thus involves two steps: "First, a court must determine, as a matter of law, whether the disputed contractual terms are ambiguous." *Great Minds* v. *John Wiley & Sons, Inc.*, 204 F. Supp. 3d 507, 511 (S.D.N.Y. 2016) (citing *Maverick Tube Corp.,* 595 F.3d at 465). Second, if the court finds no ambiguity, it interprets the contract according to its "plain meaning." *Id.* at 512. But if the court finds ambiguity, "'where there is relevant extrinsic evidence of the parties' actual intent,' then the contract's meaning becomes an issue of fact precluding summary judgment." *Sayers* v. *Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (quoting *Seiden Assocs., Inc.* v. *ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992)). The moving party thus bears the burden of proving that its proffered construction is the contract's

only fair construction.  *Vasile*, 46 N.Y.S.3d at 722 (quoting *Nancy Rose Stormer,*

*P.C.* v. *Cty. Of Oneida*, 886 N.Y.S.2d 298, 299 (4th Dep't 2009)).

**B.     Analysis**

Attempting to remove or limit certain categories of damages prior to trial,

22nd Century brings four claims.  All those claims are based on — and, 22nd

Century argues, are clearly resolved by — the plain language of the Warrant.

However, because some of the Warrant's operative language is ambiguous, and

the uncertainty that is not cured by extrinsic evidence, the Court declines to

grant summary judgment on three of 22nd Century's four claims.

> **1.     A Genuine Dispute of Material Fact Remains as to Whether Crede Is Entitled to Liquidated Damages Following an Exchange of the Warrant**

22nd Century's first claim involves the Warrant's provision for liquidated

damages.  While Crede asserts that it is entitled to liquidated damages at 1.5%

per day for the failure to deliver the shares it sought in the April 26 and May 17

exchange notices, 22nd Century argues that the plain language of the Warrant

forecloses the possibility of liquidated damages.

Section 1(c) of the Warrant provides for remedies if 22nd Century

wrongfully fails to issue shares to Crede under the Warrant.  (Warrant § 1(c)).

The relevant portions of Section 1(c), including the liquidated damages

provision, are as follows:  If 22nd Century wrongfully fails to issue shares, the

holder of the Warrant is entitled to liquidated damages "upon the Holder's

*exercise* of the Warrant."  (*Id.* (emphasis added)).  Liquidated damages are

calculated at 1.5% of the value of shares per day until the delivery of shares

Crede sought in its first and second exchange notices.  (*Id.*).  "In addition to the foregoing," the section subsequently provides for remedies "upon the Holder's *exercise or exchange*[.]"  (*Id.* (emphasis added)).  Those remedies do not include liquidated damages.  (*Id.*).

The parties advance competing interpretations of the relevant language. 22nd Century argues that Section 1(c) provides different remedies depending on whether Crede *exercised* or *exchanged* the Warrant.  (Def. Br. 15-16).  In particular, 22nd Century argues that, "[b]ecause Crede's liquidated damages claims arise from Crede's two attempts to *exchange* — not exercise — the Warrant, the first remedy under Section 1(c) for liquidated damages does not apply."  (*Id.* at 15).  In opposition, Crede argues that the Warrant does not create a binary relationship between the words "exchange" and "exercise."  (Pl. Opp. 6-10).  Thus, in Crede's view, Section 1(c) does not restrict liquidated damages solely to an exercise of the Warrant.  (*Id.*).

The Court finds aspects of the Warrant that support 22nd Century's position.  Specifically, the Warrant uses the same or similar distinguishing phrases — such as "exercise or exchange" or "exercisable or exchangeability" — 23 times throughout the document, which suggests that "exercise" does not also encompass "exchange."  (*See* Def. Reply 3).  *See also United States* v. *Zukerman*, 897 F.3d 423, 431 (2d Cir. 2018) (finding that the presence of a phrase at one point makes clear that the phrase's omission elsewhere was deliberate).  In addition, the rule against surplusage requires the Court to avoid a reading that renders some words altogether redundant — for example, the

word "exchange" in the phrase "exercise or exchange." *See Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) (collecting cases).

Crede, conversely, reads "exercise" to include "exchange" as one method of exercise. (Pl. Opp. 7). Crede asserts, and 22nd Century disputes, that the term "exercise" is used multiple time in the Warrant to refer to all types of exercise, including an exchange. (*Id.* at 7-8; Def. Br. 4-5).[3] In Crede's view, because the term "exercise or exchange" is used inconsistently, its usage rebuts the presumption that a phrase has the same meaning throughout the document. *See Freeman* v. *HSBC Holdings PLC*, No. 14 Civ. 6601 (DLI)(CLP), 2018 WL 3616845, at *54 (E.D.N.Y. July 27, 2018) ("[The] Supreme Court has recently cautioned that 'the presumption of consistent usage readily yields to context[.]'" (quoting *King* v. *Burwell*, 135 S. Ct. 2480, 2493 n.3 (2015))). In addition, Crede argues that the redundant use of "exercise" and "exchange" in the later portion of Section 1(c) is meant to indicate emphasis. (*See* Pl. Opp. 7). Doublets are two ways of saying the same thing that reinforce its meaning. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 176-77 (2012). Alternatively, doublets may be the product of sloppy drafting, rather than proof of the drafter's intent. *See id.* at 170 ("[T]his [canon] assumes a perfection of drafting that, as an empirical matter, is not often achieved.").

---

[3]     For example, Section 1(d) of the Warrant states, "Notwithstanding anything to the contrary contained herein, *exercise* of this Warrant on a cashless basis may also be made … pursuant to the exchange provisions of Section 5 of this Warrant." (Warrant §1(d) (emphasis added)). Crede argues this provision is evidence that an exchange constitutes one method of exercise. (Pl. Opp. 7).

The Court finds that, because the operative language is subject to two objectively reasonable interpretations, Section 1(c) is ambiguous. *See Law Debenture Tr. Co. of N.Y.*, 595 F.3d at 467. Given this ambiguity, the Court proceeds to consider 22nd Century's extrinsic evidence suggesting that the parties intended the word "exercise" to encompass "exchange." In support of its argument, 22nd Century produces the depositions of Crede representative, Terren Peizer, and Crede's attorney, Jeffrey Schultz. (Def. Br. 15). Both men, 22nd Century claims, testified that, in Section 1(c), the first remedy for liquidated damages applied upon Crede's exercise of the Warrant, while the second remedy applied after either Crede's exercise or exchange of the Warrant. (*Id.*).

As part of its opposition, Crede submitted declarations from Mr. Peizer and Mr. Schultz, ostensibly to give the declarants "a chance to offer their affirmative testimony on the topic." (Pl. Opp. 9; Dkt. #108-09). In response, 22nd Century argued that these "recently filed declarations intended to retract or change their testimony should not prevent the entry of summary judgment." (Def. Reply 7 (citing *Perma Research and Development Co.* v. *Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment for screening out sham issues of fact."))).

The Court has reviewed the declarations, and has found them to be complementary rather than contradictory to the deposition testimony, such

that the Court can consider them on a motion for summary judgment. *Cf.*
*Mack* v. *United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in
this circuit that a party's affidavit which contradicts his own prior deposition
testimony should be disregarded on a motion for summary judgment."). Both
declarations make clear that a genuine dispute of material fact remains as to
whether Crede is entitled to liquidated damages following the exchange of the
Warrant. Both Mr. Peizer and Mr. Schultz clarify that, as they have
consistently interpreted the Warrant, an "exercise" of the Warrant also
encompasses an "exchange." (*See* Schultz Decl. ¶¶ 3-4; Peizer Decl. ¶¶ 11-12).
They further explain that during their testimony, they were simply confirming
the text of the Warrant. (*Id.*). They were not testifying as to their interpretation
of the words on the page, nor did 22nd Century ask questions that went to the
ultimate issue of liquidated damages. (*Id.*).

Even if the Court were to consider only the depositions, the testimony of
Mr. Peizer and Mr. Schultz is far less damning than 22nd Century suggests,
and it certainly does not indicate that Defendant's "construction of the"
Warrant "is the only construction [that] can be fairly placed thereon." *Vasile*,
46 N.Y.S.3d at 1378 (internal quotations and citations omitted). Both men did
testify that the first remedy applies if there is an exercise of the Warrant, and
that the second remedy applies following an exercise or exchange of the
Warrant. (Peizer Dep. 61:20-63:04; Schultz Dep. 33:17-35:03). However,
neither man addressed whether the term "exercise" encompasses every method
of exercise, including an exchange. In point of fact, when pressed on the

matter, Mr. Peizer testified that the operative language "needs clarification," not that it conclusively foreclosed liquidated damages following an exchange. (Peizer Dep. at 63:01-02).

Viewed in Crede's favor, the plain language of the Warrant is ambiguous. Because a genuine dispute of material fact exists as to whether the liquidated damages provision applies only after an "exercise" of the Warrant, summary judgment is precluded on this claim.[4]

## 2. A Genuine Dispute of Material Fact Remains as to Whether the "Blocker" Provision Bars Crede's Claims Based on the May 17, 2016 Exchange Notice

Next, 22nd Century argues that Crede's claims based on the second exchange notice are barred by the Warrant's so-called "blocker" provision, Section 1(f). (Def. Br. 18-19). To review, following Crede's alleged breach of the Activity Restrictions, 22nd Century declared Crede's exchange rights null and void. (Def. 56.1 ¶ 32). In response, Crede unsuccessfully attempted to exchange the warrants. (*Id.* at ¶¶ 33, 36). On April 26, 2016, Crede delivered its first exchange notice seeking 77,555 shares, and on May 17, 2016, Crede deliver its second exchange notice seeking 2 million shares. (*Id.*). 22nd

---

[4] When granting Defendant's request for leave to file a motion for partial summary judgment, the Court limited the motion to those "four discrete issues" raised in Defendant's July 9, 2018 letter, and discussed at the July 11, 2018 conference. (Dkt. #97). In its memorandum of law in support of the motion for summary judgment, Defendant raises a fifth issue, contending that the liquidated damages provision is an unenforceable provision under New York law. (Def. Br. 16-18). This issue was merely referenced in passing in a footnote of Defendant's July 9, 2018 letter (Dkt. #94 n.1 ("22nd Century also is entitled to summary judgement because the liquidated damages provision amounts to an unenforceable penalty under New York law.")), and not discussed in Plaintiff's reply letter (Dkt. #96), or at the conference addressing the issuing (*see* July 11 Tr.), As a result, the Court will not address the argument here.

Century claims that the second attempted exchange was voided by the blocker provision. (Def. Br. 18-19).

The Court begins with the Warrant's text. Section 1(f) outlines "Limitations on Exercises and Exchanges." (Warrant § 1(f)). The blocker provision sets a limit for Crede's stock ownership:

> [T]his Warrant shall not be exercisable or exchangeable by the Holder hereof to the extent (but only to the extent) that the Holder or any of its affiliates would beneficially own in excess of 9.9% (the "Maximum Percentage") of the Common Stock after giving effect to such exercise or exchange.

(*Id.*). To ensure compliance, the section also provides a mechanism by which the holder of the Warrant may confirm its share ownership:

> For any reason at any time, upon the written or oral request of the Holder, the Company shall within one (1) Business Day confirm orally and in writing to the Holder the number of shares of Common Stock then outstanding, including by virtue of any prior conversion or exercise or exchange of convertible or exercisable or exchangeable securities into Common Stock, including, without limitation, pursuant to this Warrant. Upon request by the Company, Holder shall certify to the Company upon exercise of this Warrant how may share of Common Stock are beneficially owned by Holder for determining compliance with this Section 1(f).

(*Id.*).

The parties do not dispute, and the Court finds as a matter of law, that the exchange of the second warrant in accordance with its terms would have resulted in Crede owning more than 9.9% of 22nd Century shares. Crede's second exchange notice attempted to exchange 700,828 warrants for 2,000,000 shares of stock. (Def. 56.1 ¶ 36). That exchange would have resulted in Crede

owning 7,884,330 shares, out of the total 78,015,273 outstanding shares. (*Id.* at ¶¶ 19, 24).[5] As a result, Crede would have owned 10.1% of the total issued and outstanding shares.

22nd Century argues that the entire exchange notice is invalid because the attempted exchange would result in Crede exceeding the 9.9% limit. (Def. Br. 18). Conversely, the crux of Crede's textual analysis is the clause "to the extent (*but only to the extent*)." (Pl. Opp. 13 (citing Warrant § 1(f)) (emphasis added)). Crede insists that "the effect of the 'blocker' [is] not to nullify an otherwise valid Exchange Notice, but rather to limit the amount of shares issued pursuant to that Notice." (*Id.*). Therefore, in Crede's view, pursuant to the second exchange notice, Crede should have been issued shares until it reached the 9.9% threshold, at which point the blocker provision would have prohibited further issuance. (*Id.*).

Furthermore, Crede argues, the blocker provision cannot render the entire exchange void because the holder of the Warrant does not have access to share counts. (Pl. Opp. 15). In Crede's words, "22nd Century's theory is that a minor overage would result in a multi-million dollar loss and frustrate Crede's rights to receive shares within the blocker amount, for no purpose whatsoever." (*Id.*). 22nd Century counters that Crede was on public notice of the total

_____

[5]    Plaintiff argues that Defendant "has not offered proof as to the total amount of outstanding shares as of the date of [Plaintiff's] May 17, 2016 exchange notice. (Pl. 56.1 Opp. ¶ 24). In point of fact, the declaration of Thomas L. James, 22nd Century's Vice President, General Counsel, and Secretary, states that on May 17, 2016, 22nd Century had 76,015,273 shares outstanding, the same amount of outstanding shares stated on the cover page of 22nd Century's publicly filed SEC Form 10-Q as of May 9, 2016. (Dkt. #103-3 ("James Decl.") ¶¶ 1, 5-6).

number of issued and outstanding shares because, seven days prior to the second exchange notice, that number was included in 22nd Century's public disclosures to the SEC. (Def. Br. 19).

In addition, both parties highlight relevant provisions that allow for a confirmation of shares. Crede cites to a mechanism for 22nd Century to confirm Crede's share ownership. (Pl. Opp. 15). 22nd Century points to language that allows Crede to request a written confirmation from 22nd Century of the total number of Common Stock then outstanding. (Def. Reply 11-12). Both parties argue that the other is attempting to shift its obligations to its adversary in support of its textual interpretation. Further, 22nd Century argues that it cannot unilaterally alter an exchange notice to provide for fewer shares, in order to remain below the blocker threshold. (*Id.* at 12-13).

Both parties' interpretations of the "blocker" provision are reasonable. Turning then to the extrinsic evidence, the Court finds that the evidence offered by the parties does not shed light on how to interpret this ambiguous provision of the Warrant. For its part, 22nd Century has once again submitted the deposition testimony of Crede representatives Mr. Peizer and Mr. Schultz. (Def. Br. 18-19). That testimony, according to 22nd Century, establishes "that an attempted exchange that would result in Crede exceeding the 9.9% blocker in Section 1(f) of the Tranche 1A Warrant would be ineffective." (*Id.*). But again the depositions are not as conclusive as 22nd Century claims. In point of fact, when Mr. Peizer was asked what he would expect 22nd Century to do "[i]f

Crede inadvertently exercised or exchanged for shares above the 9.9 percent blocker," he responded, "The process would be we would submit the notice, they would honor the notice up to the 9.9." (Peizer Dep. 232:24-233:08). Mr. Schultz also testified that if Crede "owned nine point nine nine percent, they would … only be able to exercise or exchange up to nine point nine nine." (Schultz Dep. 41: 25-42:03).[6]

In sum, neither the Warrant nor the parties' extrinsic evidence establishes whether the "blocker" provision nullifies Crede's second exchange notice in its entirety. This issue remains a dispute of material fact. And in turn, the Court cannot enter summary judgment for 22nd Century on Crede's claim for the shares sought by its second exchange notice.

### 3. Because Crede Was Not Required to Submit a Futile Exchange Notice, 22nd Century Is Not Entitled to Summary Judgment on Crede's Claim for the Balance of the Warrant

Next, 22nd Century moves for summary judgment on Crede's claim for "the balance" of the Warrant. (Def. Br. 20-21). The balance represents the remaining, unexercised portion of the Tranche 1A Warrant, after a reduction for the exercising of 30,000 Warrants on April 26, 2016, and 700,828 Warrants on May 17, 2016. (Tucker Decl., Ex. D).

Here, the operative text of the Warrant is unambiguous. Under Section 5, to make an exchange, Crede is required to deliver an exchange

---

[6] Mr. Schultz's testimony is echoed in his declaration, where he confirms that he "did not testify, and do[es] not understand, that if an Exchange Notice results in any shares being issued in excess of the 9.9% limitation that the entire Exchange Notice is invalid." (Schultz Decl. ¶ 6). Instead, Mr. Schultz understood the provision to obligate 22nd Century "to deliver shares up to the 9.9% threshold, but no more." (*Id.* at ¶ 5).

notice to 22nd Century prior to September 29, 2016, the expiration date of the Warrant. (Warrant § 5(a), (d); Def. 56.1 ¶¶ 28-29). The notice must include certain information, including the exchange date and the exchange price. (Warrant, Ex. B). That information is necessary for 22nd Century to calculate the total number of shares to be provided in response to the exchange notice, known as the "exchange number." (*Id.*).

22nd Century's argument on this point is simple: Because Crede did not submit an exchange notice for these shares, its claim for the balance of the Warrant is meritless. (Def. Br. 20-21). "[T]he submission of an [e]xchange [n]otice was necessary to pursue a claim[,] … without which the Exchange Number of the shares of stock issuable cannot be determined." (Def. Reply 13-14).

However, while simple, the argument is incorrect. 22nd Century's argument ignores — and at points misrepresents — the context of the case, and the prior conduct of the parties. To review, between March and May, 2016, 22nd Century twice notified Crede that Crede's exchange rights under the Warrant were null and void due to Crede's breach of the Activity Restrictions. (Def. 56.1 ¶¶ 32, 35). In addition, during that time, Crede delivered two exchange notices to 22nd Century. (*Id.* at ¶¶ 33, 36). After receiving the first exchange notice, 22nd Century reiterated in writing that Crede's exchange rights were null and void. (*Id.* at ¶ 35). 22nd Century did not honor either of Crede's exchange notices.

22nd Century now argues that Crede was obligated to submit additional exchange notices, even though 22nd Century had repudiated the exchange right and declined to honor prior notices. (Def. Reply 13-14). The Court disagrees. Crede's prior submission of exchange notices, and 22nd Century's responses, prove that sending a third exchange notice to 22nd Century would have been futile. Compliance with a contractual provision "is not required where it would amount to a useless gesture." *Wolff & Munier, Inc.* v. *Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991); s*ee also United States* v. *Casamento*, 887 F.2d 1141, 1169 (2d Cir. 1989) ("The law does not require the doing of a futile act.").

Because this Court cannot obligate Crede to pursue a futile act, 22nd Century is not entitled to summary judgment on Crede's claim for the balance of the warrant.

**4.    Crede's Claims Are Capped at $10 Million**

Finally, 22nd Century argues, from the plain language of the Warrant, that Crede's claims are capped at $10 million. (Def. Br. 21). Section 15 of the Warrant states that Crede's "remedies, including any right of damages, shall be subject to Section 9(k) of the Securities Purchase Agreement" between 22nd Century and Crede. (Def. 56.1 ¶ 38). Section 9(k)(iii) of the Securities Purchase Agreement provides that 22nd Century's maximum liability under the provision "shall not exceed 100% of the aggregate Purchase Price actually paid" by Crede under the Securities Purchase Agreement. (*Id.* at ¶ 39). It is undisputed that the "aggregate Purchase Price" was $10 million. (*Id.* at ¶ 40).

Crede concedes that the Warrant limits its monetary damages to $10 million but maintains, without any citation to authority, that the cap does not include either interest or specific performance. (Pl. Opp. 18). However, this argument ignores the plain language of the Warrant. Section 15 unambiguously states that Crede's "*remedies, including any right of damages*, shall be subject to" the $10 million cap. (Def. 56.1 ¶ 38 (citing Warrant § 15) (emphasis added)). Accordingly, the plain language of the Warrant unambiguously evidences the parties' intent for the cap to be applied broadly. No reasonable jury could find that the interest and specific performance remedies sought by Crede are not subject to the cap. For that reason, the Court grants summary judgment in favor of 22nd Century on this limited issue of the damages cap.

## CONCLUSION

For the foregoing reasons, 22nd Century's motion for summary judgment as to whether Crede's claim in Counts III-V are capped at a maximum of $10 million is GRANTED; 22nd Century's motion for summary judgment as to its additional claims is DENIED.

The parties are ORDERED to submit a joint letter on or before **March 1, 2019**, setting forth their availability for a bench trial in the second half of 2019 and the contemplated length of the trial. If the parties would like to be referred to the Court's Mediation Program, or to a settlement conference before the

Court or Magistrate Judge Henry B. Pitman, they can advise the Court in that same letter.

   SO ORDERED.

Dated:  February 15, 2019
     New York, New York

           _____
            KATHERINE POLK FAILLA
           United States District Judge